UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| XAO THAO,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>        Defendant. | Case No. 15-cv-02327-NJV<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 26, 27 |

## INTRODUCTION

Plaintiff, Xao Thao, seeks judicial review of an administrative law judge ("ALJ") decision denying Plaintiff's application for disability insurance benefits and supplemental income benefits under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 6 & 10). The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial

evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF RELEVANT EVIDENCE

Plaintiff's severe medically determinable impairments are rheumatoid arthritis and gout. AR 21. Plaintiff alleges that swelling in his feet and knees causes chronic pain which limits his daily activities, including prolonged sitting or standing. Additional physical complaints include low back pain and neck pain. AR 198.

Plaintiff began treatment by Del Norte Community Health Center on December 4, 1995. At that time he reported a six or seven-year history of gouty arthritis, with pain once or twice monthly. AR 176. On April 29, 2003, he reported ongoing intermittent attacks of pain and swelling in his right ankle, right wrist, and right knee. AR 173. By August 23, 2010, Plaintiff reported ongoing pain which limited his walking and ability to wear a shoe despite medication. AR 161. On October 11, 2010, he told his provider that "[h]e has had to leave work many times" due to toe pain. AR 160.

On January 3, 2011, Daniel Stein, PA, noted Plaintiff's ongoing temporary disability since November 16, 2010, due to foot pain (AR 157-158), and by March 31, 2011, the bilateral foot pain had become constant. AR 156. Right foot x-rays dated May 3, 2011, showed an erosion at the right first proximal phalanx, suspicious for gout. AR 131. An MRI of the left foot on March 12, 2013, showed moderate tenosynovitis. AR 321-322.

On July 19, 2011, treating rheumatologist Nancy Van Speybroeck, M.D. reported a three year history of episodic swollen joints, affecting Plaintiff's great toes, ankles, right foot, right knee, wrists, and elbows. AR 193. Despite medication, on April 24, 2012, Plaintiff continued to

1  report gout attacks in various joints.

2  On September 15, 2011, primary treating physician Warren J. Rehwaldt, M.D., gave a primary diagnosis of neuropathy of the lower extremity, noting a "marked decrease in reflexes, symmetrically, nearly absent vibration in feet, and loss of protective sensation to distal soles, both sides." AR 152. On May 21, 2013, rheumatologist Heidi Wong, M.D., noted that "after all these years of gout medication, pt still has 'attacks' of pain. Pt clearly had an inflammatory tap from knee and synovitis in foot. Suspect PsA/seronegative inflammatory arthropathy." AR 333. On July 2, 2013, Dr. Wong found intermittent, episodic alternating, migrating seronegative arthritis. AR 331.

### THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *See* AR 21-29.

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2011, the alleged onset date. AR 21.

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

3

more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).  The ALJ found that Plaintiff suffered the following severe impairments:  rheumatoid arthritis and gout.  AR 21.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).  The claimant bears the burden of showing her impairments meet or equal an impairment in the listing.  *Id*.  If the claimant is successful, a disability is presumed and benefits are awarded.  *Id*.  If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.  *Id*. § 416.920(a)(4)(iv), (e).  Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  AR 22.  Next, the ALJ determined that Plaintiff retained the RFC "to perform medium work" with several exertional limitations.  AR 23.

At Step Four, the ALJ determined that Plaintiff was capable of performing his past relevant work.  AR 27.  Despite this determination, the ALJ continued to Step Five, and after considering the Plaintiff's age, education, work experience, and RFC, and after consulting with a vocational expert, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR 28.  Accordingly, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act," from the alleged onset date, through the date of the decision.  AR 29.

## ISSUESS PRESENTED

Plaintiff presents five issues for this court's review:  (1) whether the RFC is supported by substantial evidence; (2) whether the ALJ made inappropriate medical findings regarding side effects of medication; (3) whether the ALJ made inappropriate medical findings regarding rheumatoid arthritis; (4) whether the ALJ failed to consider all medically determinable impairments; and (5) whether the ALJ failed to fully develop the medical record.  Pl.'s Mot. (Doc. 26) at 2.

//

//

4

# DISCUSSION

**Whether the RFC is supported by substantial evidence**

Plaintiff challenges the ALJ's RFC determination by asserting that the ALJ failed to note or discuss treating physician Speybroeck's consideration of peripheral neuropathy to explain Plaintiff's condition, as well as treating physician Rehwaldt's opinion that Plaintiff's symptoms may be better explained as neuropathy and who recommended an appointment with neurology. Pl.'s Mot. (Doc. 26) at 6.

Indeed, Dr. Speybroeck did state that she wondered if Plaintiff's pain was "more from a peripheral neuropathy than his apparent gouty arthritis." AR 194. Dr. Rehwaldt discussed this possibility with Dr. Speybroeck and opined that Plaintiff's "symptoms are indeed more c/w neuropathy, and he has several findings suggesting this." AR 152. The ALJ makes no mention of these two treating physician's opinions. This is troubling where the ALJ relied on other portions of both of these doctor's opinions to find Plaintiff's statements regarding the intensity, persistence, and limiting effects of Plaintiff's pain to be incredible. Considering Dr. Rehwaldt's opinion that Plaintiff has "several findings" suggesting neuropathy, the court would expect the ALJ to address it.

Plaintiff also asserts that additional medical evidence was ignored, including: (1) an "MRI of the left leg showed 'moderate tenosynovitis of the flexor hallucis longus' as well as 'mild tenosynovitis at the flexor digitorum longus, mild enthesopathy at the Achilles tendon,' all of which support the claimant's allegations of foot pain;" (2) that Plaintiff had been granted temporary disability; and (3) that Plaintiff had ambulated with a cane for two or three years. Pl.'s Mot. (Doc. 26) at 7. In response, the Commissioner does not argue that the ALJ took factors into consideration. Moreover, the Commissioner does not argue that it was not error for the ALJ to not discuss the neuropathy opinions of Drs. Speybroeck and Rehwaldt, or the other medical evidence listed by Plaintiff. Indeed, with the exception of mentioning the MRI by way of example, the Commissioner does not address Plaintiff's specific contentions and arguments at all. The court finds this to be a concession.

Instead, the Commissioner argues that "Plaintiff does not state what other restrictions the

1  ALJ should have included in his RFC . . . [which] extinguishes Plaintiff's challenge." Def.'s Mot.
2  (Doc. 27) at 5.  However, Plaintiff does specifically challenge the RFC's of "medium work
3  without limitations on standing," arguing that the "decision lists evidence proving the plaintiff's
4  inability to stand sufficient to perform a medium job, then ignores such evidence when fashioning
5  an RFC."  Pl.'s Br. (Doc. 26) at 5-6.  Thus, the court finds that Plaintiff does state properly which
6  restrictions the ALJ should have included in the RFC and the Commissioner has failed to rebut
7  those arguments.

As Plaintiff states in the Reply:

> In arguing that the ALJ properly relied on medical opinion evidence, Defendant does not respond to any of the issues specifically raised by the plaintiff . . . Defendant does not dispute that Dr. Van Speybroeck raised the issue of peripheral neuropathy, that the diagnosis is consistent with the opinion of Dr. Rehwaldt and is consistent with the testimony of the Plaintiff.  Defendant does not dispute that the ALJ failed to consider this diagnosis as an explanation for the Plaintiff's symptoms.
>
> Defendant does not dispute that the MRI of the left leg was ignored or that evidence of periods of temporary disability due to the severity of symptoms was ignored.
>
> Defendant does not dispute that evidence of [Plaintiff's] use of a cane was ignored.
>
> Defendant does not dispute that by failing to consider these issues the ALJ could not properly develop the residual functional capacity and that the vocational expert was thereby deprived of the opportunity to consider whether the Plaintiff could perform work at the medium exertional level where the Plaintiff must make use of a cane.
>
> Defendant does not dispute that by failing to consider these issues the decision is not supported by substantial evidence.

Pl.'s Br. (Doc. 28) at 2.  The court takes these concessions, along with the Commissioner's failure to rebut Plaintiff's assertions that the ALJ failed to take the above stated evidence into consideration when fashioning the RFC, and determines that the RFC determination lacks substantial evidence.

**Whether the ALJ made inappropriate medical findings regarding side effects of medication.**

Plaintiff challenges the ALJ's finding regarding the side effects of Plaintiff's medication and Plaintiff's reasons for non-compliance with medication.  Plaintiff reported that he had stopped taking some of his pain medication due to abdominal upset.  In addressing this non-compliance,

the ALJ stated that "it is difficult to conceive that the claimant would wish to stop taking medications to treat gout and rheumatoid arthritis simply due to abdominal upset if these impairments actually resulted in disabling pains." AR. 26.  Plaintiff argues that there is no medical expert basis for such a determination.

The Commissioner says that the finding is appropriate because the ALJ properly rejected Plaintiff's testimony regarding pain and because the ALJ can rely on Plaintiff's non-compliance to make a determination regarding the credibility of Plaintiff's pain.  The court finds the Commissioner's arguments to be circuitous.

The credibility determination to which the Commissioner points, is the broad determination regarding credibility at the beginning of the RFC findings.  The point in controversy here, regarding non-compliance, is a specific finding used as one of the bases for the broader finding.  In other words, the ALJ makes several specific findings regarding credibility to make the broad finding that the "Plaintiff's statements regarding intensity, persistence, and limiting effects" (AR 23) of the pain are not credible.  The Commissioner cannot simply point to the broad finding to bolster one of the underlying specific findings.

Plaintiff is challenging that the underlying credibility finding of non-compliance with medication is not supported by substantial evidence.  Plaintiff asserts that there is no medical basis for the ALJ to determine that the abdominal upset is not a valid reason for non-compliance with that specific pain medication.  The court agrees.  The ALJ simply makes that statement without pointing to any medical records or opinions in support.  While the ALJ may rely on non-compliance with medications as a basis for an adverse credibility determination, SSR 82-59 requires that "[w]here SSA makes a determination of 'failure,' a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable."  The ALJ's statement that "it is difficult to conceive" that the Plaintiff would discontinue his medications, "simply due to abdominal upset," is made without evidentiary support and does not constitute "specific, clear and convincing reasons," *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007), for determining that the non-compliance was not justifiable.  Accordingly the court finds error.

//

1  **Whether the ALJ made inappropriate medical findings regarding rheumatoid arthritis.**

2  Plaintiff challenges the ALJ's findings regarding rheumatoid arthritis on the basis that the

3  ALJ made medical determinations, including the interpretation of raw medical test data, without

4  the benefit of expert medical opinion. Specifically, Plaintiff points to the ALJ's finding that

> although the medical evidence revealed positive antinuclear antibody testing, subsequent lab work demonstrated a normal sedimentation rate, normal C-reactive protein testing and a negative rheumatoid factor. Additionally, while objective imaging evidence showed moderate tenosynovitis at the flexor halluces longus, the claimant otherwise demonstrated no more than mildly abnormal findings. On these bases, the objective evidence is also inconsistent with the claimant's allegations of disabling rheumatoid arthritis.

AR 24. As Plaintiff argues, the ALJ does not point to any medical expert opinions in support of these medical findings. The importance of the ALJ pointing to expert medical opinion is that "as a lay person, an ALJ is simply not qualified to interpret raw medical data in functional terms." *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (internal citations omitted).

The Commissioner's response to this is to address the lab reports, arguing that the ALJ was well within her discretion to interpret the reports. However, as Plaintiff rightly states "there were not just the lab reports . . . [t]here was also a positive antinuclear antibody testing. All lab tests are not equally important. Some are critical, others not so much. An ALJ is not qualified to determine whether a positive antinuclear antibody is much more indicative of a severe impairment than the other tests mentioned in the opposition." Pl.'s Mot. (Doc. 28) at 4.

As to the other lab reports, the sedimentation rate, the C-reactive protein testing, and the negative rheumatoid factor, the court finds that the reports do support the ALJ's determination. The ALJ is within her discretion to read the reports and, where the reports state the normal levels and show that Plaintiff's results are within them, the ALJ can reasonably conclude that the reports do not support Plaintiff's claim. However, Plaintiff is correct that the ALJ provides no explanation, with evidentiary support, as to why those lab results are to be given greater weight than the positive antinuclear antibody result. Thus, the court finds that the determination is without substantial evidence.

//

//

**Whether The ALJ failed to consider all medically determinable impairments & whether the ALJ failed to properly develop the record.**

Here Plaintiff argues that the ALJ erred in that while the decision acknowledges a diagnosis of mild emphysema, the ALJ failed to find the condition as a severe impairment at Step Two. Plaintiff also argues that the ALJ failed to properly develop the medical record, because Plaintiff submitted paper copies of medical records prior to the hearing, referenced the records at the hearing, and then was told by the ALJ that she would contact counsel for Plaintiff if the records could not be located. The ALJ made her decision without the records and without contacting Plaintiff to get a copy of the records. The Commissioner argues that Plaintiff was responsible for submitting those records and that the records would not have affected the ALJ's determination.

This matter is ripe for remand because of the errors listed above. It is properly remanded for further proceedings rather than an award for benefits because further proceedings would serve a useful purpose and because the court cannot say that the ALJ would be required to find Plaintiff disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Thus, the court will defer making a determination as to whether Plaintiff should have notified the agency that the records were incomplete, or whether the records would have had a different effect. Instead, on remand, Plaintiff will be allow to resubmit the records and the ALJ is instructed to review them and determine whether they have any effect on her determination either at Step Two or at any subsequent steps. Further, the ALJ will address the other errors identified by the court above in relation to the formulation of the RFC.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's motion for summary judgment. The court hereby REMANDS this matter for further proceedings in accordance with this Order.

A separate judgment will issue.

//

//

//

1    **IT IS SO ORDERED**.

2    Dated: September 8, 2016

_____
NANDOR J. VADAS
United States Magistrate Judge